**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 04-1211

THOMAS B. FORD, JR.,

Plaintiff - Appellant,

versus

GENERAL ELECTRIC LIGHTING, LLC,

Defendant - Appellee.

Appeal from the United States District Court for the Western District of Virginia, at Harrisonburg. Samuel G. Wilson, Chief District Judge. (CA-03-24)

Argued: October 28, 2004              Decided: January 7, 2005

Before NIEMEYER, KING, and SHEDD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Brad D. Weiss, CHARAPP & WEISS, L.L.P., McLean, Virginia; James Anthony Klenkar, HALL, MONAHAN, ENGLE, MAHAN & MITCHELL, Winchester, Virginia, for Appellant. Marc Antoney Antonetti, BAKER & HOSTETLER, L.L.P., Washington, D.C., for Appellee. **ON BRIEF:** Jennifer L. Rasile, CHARAPP & WEISS, L.L.P., McLean, Virginia, for Appellant. Elizabeth A. Scully, BAKER & HOSTETLER, L.L.P., Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Thomas Ford appeals the district court's award of summary judgment to his former employer, General Electric Lighting ("GE Lighting"), in a civil action alleging racial discrimination and retaliation against Ford, in violation of 42 U.S.C. § 1981. Ford's lawsuit stems from adverse employment actions taken against him by GE Lighting following a workplace altercation between Ford, an African-American, and a white co-worker. As explained below, Ford has failed to establish either his racial discrimination claim or his retaliation claim. Because we also reject Ford's contention that the court's handling of discovery proceedings entitles him to relief, we affirm the district court.

I.

A.

Prior to his workplace fight with William Heller, which occurred on May 16, 2002, Ford had been employed by GE Lighting at its Winchester, Virginia, Lamp Plant (the "Plant") for more than twenty-six years.[1] During the lunch period the day before the altercation, Ford, accompanied by co-worker Steve Johnson, entered the employees' break room of the Plant, where Heller and other

_____

[1] We relate the details of this event and the subsequent actions of GE Lighting in the light most favorable to Ford. See Spriggs v. Diamond Auto Glass, 242 F.3d 179, 182 (4th Cir. 2001) ("Spriggs II").

2

white employees were eating food provided by a visiting vendor.[2] Ford and Johnson each then made statements that only certain employees of the Plant (including Heller) received free food. This discussion lasted five to ten minutes, and Johnson and Ford then departed.

At approximately seven o'clock the following morning, as Ford walked to his workstation at the Plant, Heller angrily called to Ford, shouting Ford's name over machinery noise that required workers to wear ear plugs. When Ford did not respond, Heller crossed an aisle and confronted Ford about the statements he had made in the break room the previous day. After Heller cursed Ford and shook his finger in Ford's face, Ford turned and walked away. Heller pursued, continued to curse and point, and punched Ford in the face and body. Ford then sought to restrain Heller and punched him, causing Heller to bleed. Co-workers Johnson and Gene Orndorff then separated Ford and Heller.

Within minutes, Ford sought out the shift supervisor, Ron Kirby, and recounted the details of the fight. Ford returned to work, and later that day he spoke with Plant Manager Richard Calvaruso. Ford complained to Calvaruso that Heller had attacked him and that the attack was racially motivated.

---

[2] The vendor was apparently present at the Plant to conduct various mechanical repairs and had purchased lunch for some of the Plant's employees.

3

On May 24, 2002, six days after the altercation, Calvaruso terminated Ford and Heller for violating GE Lighting's policy against workplace violence. In his termination letter, Calvaruso observed that the Plant "paid very close attention to [Ford's] allegation that [Heller's] action was racially motivated" but had been unable to find support for it. Prior to the terminations, GE Lighting interviewed and obtained statements from seven witnesses to the break room discussion and the fight. The witnesses provided widely differing accounts of the two events, and disputed whether Heller or Ford threw the first punch.

On May 28, 2002, Ford appealed his termination to the Plant's Peer Review Panel, as had Heller.[3] After a hearing conducted on June 11, 2002, the Panel recommended that Ford and Heller be reinstated, subject to certain disciplinary measures. These measures included modification of their Plant seniority dates to July 22, 2002, a prohibition against posting for new positions in the Plant for a period of twenty-four months, the imposition of periods of unpaid suspension, and letters of reprimand being placed in their personnel files. Although GE Lighting's policy required the discharge of Plant employees who received two letters of reprimand (Ford had received a reprimand thirteen years earlier),

---

[3] The Peer Review Panel, consisting of three peers at the Plant and two management representatives, convenes to hear employee appeals. The Panel makes its decisions by majority vote and the ballots are secret.

4

the Panel recommended excepting Ford from that rule.  On June 12, 2002, Calvaruso adopted all the Panel's recommendations on Ford and Heller save one — he reduced the ineligibility period for posting for new Plant positions to twelve months.

On November 1, 2003, GE Lighting laid off approximately thirty employees on the basis of Plant seniority as part of a reduction in force (the "RIF").  Because they had lost their Plant seniority as a result of the fight, Ford and Heller were laid off as part of the RIF.  On January 9, 2004, both Ford and Heller were recalled to the Plant.

### B.

According to Ford, GE Lighting discriminated against its African-American employees throughout his employment.  He asserts, inter alia, that employees of the Plant regularly referred to African-American employees with racially offensive epithets and that African-American employees were not promoted fairly.  He also maintains that, in 1999, the Plant's former Human Resources Manager permitted Caucasian employees to have Sundays off for religious purposes but denied Ford the same accommodation.  Ford complained to GE Lighting supervisors and managers, including Calvaruso, on approximately ten occasions about racial comments and jokes in the Plant and about the Plant's failure to fairly promote its African-American employees.  For example, in 2001, Ford accused Calvaruso of being a racist and avoiding him.  Calvaruso testified that he

immediately apologized and requested that Ford give him a chance to prove this was not the case.

C.

On April 16, 2003, Ford filed this civil action against GE Lighting in the Western District of Virginia. His complaint alleged that GE Lighting had discriminated against him on account of his race and retaliated against him in response to his complaints of racial discrimination, in contravention of 42 U.S.C. § 1981.[4] The discriminatory and retaliatory acts included his termination, the removal of his Plant seniority, the prohibition against posting for new positions within the Plant for twelve months, an unpaid suspension, and a letter of reprimand.

In conducting discovery, Ford sought to secure documents relating to the investigation of his altercation with Heller from both GE Lighting and its parent, General Electric Company ("GE"). GE Lighting opposed Ford's discovery efforts concerning the fight investigation, contending that the documents contained attorney-client and attorney work product privileged information. On December 2, 2003, a magistrate judge ordered GE Lighting to produce the requested documents to Ford but authorized the redaction of those portions that were "within the privilege and protection of"

---

[4] Section 1981 of Title 42 grants all persons within the jurisdiction of the United States "the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). See Spriggs v. Diamond Auto Glass, 165 F.3d 1015, 1018-19 (4th Cir. 1999) ("Spriggs I").

6

the attorney work product privilege (the "December Order"). In addition, in early November 2003, Ford secured the issuance of a subpoena duces tecum to GE, requesting similar documents held by GE. In response, GE contended that the documents were privileged. Shortly thereafter, on December 15 and 19, 2003, Ford filed motions to compel GE Lighting and GE to produce documents on their Ford-Heller fight investigations, relying on the December Order and the subpoena issued to GE.

On December 29, 2003, after extensive discovery (including at least seventeen depositions, three requests by Ford for documents, and various interrogatories), GE Lighting filed a motion for summary judgment on Ford's claims. A hearing on the summary judgment request was then scheduled for January 16, 2004. A day earlier, on January 15, 2004, the magistrate judge heard argument on Ford's motions to compel, and he ordered GE Lighting and GE to produce the requested documents to the district court for in camera review (the "January 15 Order"). In compliance with that directive, GE Lighting and GE submitted the documents to the district court the following morning. Later that day, January 16, the district court heard argument on GE Lighting's motion for summary judgment. During that proceeding, Ford did not raise any issue concerning the January 15 Order or the documents produced for in camera review. On January 24, 2004, the court orally notified counsel that it intended to grant GE Lighting's summary judgment

7

motion, and it removed the matter from its trial calendar.[5]  On February 5, 2004, Ford filed objections to the magistrate judge's January 15 Order, asserting that GE was not entitled to assert the work product privilege.

On February 6, 2004, the district court filed its opinion granting summary judgment to GE Lighting on both of Ford's claims. Ford v. Gen. Elec. Lighting, LLC, No. 5:03CV00024 (W.D. Va. Feb. 6, 2004).  The court entered a separate order that day denying all outstanding discovery motions as moot.  Ford has appealed, maintaining that the court erred in its summary judgment assessment of his claims, and that its ruling, in view of the January 15 Order, was rendered prematurely.  We possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We review de novo a district court's award of summary judgment, viewing the facts in the light most favorable to, and drawing all inferences in favor of, the appellant. Love-Lane v. Martin, 355 F.3d 766, 755 (4th Cir. 2004).  An award of summary judgment is only appropriate where the pleadings, affidavits, and responses to discovery "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Celotex Corp. v.

---

[5]  In its July 8, 2003, Scheduling Order, the district court calendared a jury trial to begin on January 27, 2004.

Catrett, 477 U.S. 317, 323 (1986). We review a district court's rulings on discovery matters for abuse of discretion. Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003).

## III.

Ford's claims are asserted pursuant to § 1981 of Title 42, which accords "[a]ll persons within the jurisdiction of the United States . . . the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Ford alleges that GE Lighting contravened § 1981 in two respects: racial discrimination and retaliation.[6] Because Ford has presented no direct evidence of racial discrimination, his claims are subject to the judicially created burden-shifting scheme set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and its progeny. Hawkins v. Pepsico, Inc., 203 F.3d 274, 278 (4th Cir. 2000). Under this proof scheme, if Ford could successfully establish a prima facie case of racial discrimination or retaliation, "the production burden shifts to [GE Lighting] to articulate some legitimate, nondiscriminatory reason"

---

[6] GE Lighting does not contest the fact that Ford's employment at the Plant constituted a contract for purposes of § 1981. See Spriggs I, 165 F.3d at 1018-19 (recognizing that "an at-will employment relationship [under Maryland law] is contractual" and that "such relationships may therefore serve as a predicate for § 1981 claims"); see also Miller v. SEVAMP, Inc., 362 S.E.2d 915, 916-17 (Va. 1987) (recognizing that at-will employment relationships are contractual under Virginia law).

for its actions. Id. (citations omitted). In turn, if GE Lighting could successfully meet its burden, Ford must then show that GE Lighting's proffered reason for its decisions was pretextual and that race or retaliation was the actual reason for its adverse employment actions. Id.

## A.

In order for Ford to properly forecast a racial discrimination claim under § 1981, he must show, viewed in the light most favorable to him, that (1) he is a member of a protected class, (2) an adverse employment action was taken against him, (3) other Plant employees of a different race had engaged in conduct of comparable seriousness, and (4) the disciplinary measures imposed on those other employees were less severe than those imposed on him. See Moore v. City of Charlotte, 754 F.2d 1100, 1105-06 (4th Cir. 1985) (recognizing ways of establishing prima facie claim of racial discrimination in Title VII context); see also Gairola v. Va. Dep't of Gen. Servs., 753 F.2d 1281, 1285 (4th Cir. 1985) (holding that elements of prima facie Title VII claim and prima facie § 1981 claim are identical). It is undisputed that Ford satisfies the first two prongs of his racial discrimination claim.

Assessing the latter two prongs of his claim in the proper light, Ford proffered sufficient evidence to show that the prohibited conduct in which he engaged — a physical workplace altercation with another Plant employee — was comparable in

10

seriousness to several instances of misconduct by non-African-American employees. See Cook v. CSX Transp., Corp., 988 F.2d 507, 511 (4th Cir. 1993) ("[T]he comparison will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same set of circumstances.").  In support of his claim, Ford relies on several incidents in which white employees at the Plant violated GE Lighting's policy against workplace violence and were neither terminated nor received discipline as severe as that imposed on Ford.  First, in April 1997, Tom DeMayo intentionally pushed Guy Sager (both white employees), causing Sager to fall into a pipe, cutting and bruising his head.  Approximately ten years ago, Ellen Miller, a white employee, slapped a temporary employee.  Finally, approximately twenty years ago, William Webster and Charlie Colliflower, both white employees, shoved each other after a lunch table disagreement; Colliflower then put Webster in a "bear hug."[7]  Ford has not provided an example of any altercation where a white employee involved in a workplace fight alleged self-defense.

Even more than the analogous workplace incidents to which our attention has been directed, Ford and Heller were, in this situation, identically situated because they were involved in the

---

[7] While Ford also points to several other incidents, they are not of comparable seriousness, either because there was no physical contact between the employees or because the parties agreed that the rough-housing was a "joke" or "horseplay."

same workplace incident. Importantly, GE Lighting saw fit to discipline Heller, the white employee, in the same manner as it disciplined Ford. Ford's attempt to differentiate himself from Heller on the ground that he acted in self-defense while Heller was the aggressor in the altercation is unavailing. And the fact that Ford may have acted in self-defense is immaterial, because it is undisputed that both Ford and Heller violated the Plant's policy against violence. Ford has proffered no evidence that GE Lighting has heretofore disciplined a white employee claiming self-defense in a manner less severely than it disciplined him. In such circumstances, we must agree with the district court that Ford has failed to make a prima facie showing of racial discrimination. As a result, the court properly awarded summary judgment to GE Lighting on Ford's discrimination claim.

B.

1.

As explained below, the district court's award of summary judgment to GE Lighting on Ford's retaliation claim must also be sustained. In order to make a prima facie claim of retaliation, Ford was obliged to show that (1) he engaged in protected activity, (2) he suffered an adverse employment action at the hands of GE Lighting, and (3) GE Lighting took the adverse action against him because of his protected activity. Spriggs II, 242 F.3d at 190.

12

Ford readily satisfies the first two prongs of his retaliation claim. First, it is undisputed that Ford was engaged in a protected activity when he filed his internal racial discrimination complaints; namely, he alleged that Heller's attack was racially motivated, that GE Lighting had failed to promote African-Americans, and that certain Plant employees routinely made racial jokes and slurs. See Peters v. Jenney, 327 F.3d 307, 320 (4th Cir. 2003). Second, Ford's termination by GE Lighting, and the conditions of his reinstatement, such as his loss of seniority, constituted adverse employment actions. See James v. Booz-Allen & Hamilton, 368 F.3d 371, 375-76 (4th Cir. 2004).

Under the third prong of his retaliation claim, however, Ford must show that GE Lighting's decisionmaker in the adverse action — Calvaruso — had knowledge of Ford's protected activities. See Price v. Thompson, 380 F.3d 209, 213 (4th Cir. 2004). In making this assessment, we are obliged to consider the time period between the employee's protected activity and the employer's adverse employment actions, for "the passage of time tends to negate the inference of discrimination." Price, 380 F.3d at 213. Viewing the summary judgment record in the light most favorable to Ford, a reasonable trier of fact could find that Calvaruso knew Ford had engaged in protected activity, and the brief period of time between this activity and Ford's discharge — six days — permits an inference of retaliation. First of all, before Ford's

13

termination in May 2002, Ford had complained to Calvaruso directly that Heller's conduct in the altercation was racially motivated, as Calvaruso acknowledged. Second, in 2001, during Calvaruso's first week at the Plant, Ford accused Calvaruso of being a racist and avoiding him.[8] In these circumstances, Ford has established a prima facie case of retaliation, in that a reasonable trier of fact could conclude that GE Lighting, specifically Calvaruso, knew of Ford's protected activity and soon thereafter discharged Ford. See Karpel v. Inova Health Sys. Servs., 134 F.3d 1222, 1229 (4th Cir. 1998) (holding that little or no direct evidence of causal connection between plaintiff's protected activity and adverse employment action is required for plaintiff to survive summary judgment).

2.

In assessing the final prong of the McDonnell-Douglas test, however, Ford's proof comes up short, in that GE Lighting has proffered a legitimate, nondiscriminatory reason for disciplining Ford, that is, fighting in the workplace. Hawkins, 203 F.3d at

---

[8] Ford's other evidence that Calvaruso had knowledge of Ford's protected activity is inapposite. First, approximately two to three months prior to the altercation, Ford complained to Russell Gallimore, the Employee Practices Manager in Cleveland, Ohio, about GE Lighting's failure to promote African-Americans. Calvaruso claimed that he had no knowledge of this complaint; Ford offers no evidence to the contrary. Second, in 1997, Ford, along with six other employees, met with the Plant's Human Resources Manager, four years prior to Calvaruso's employment at the Plant, to discuss a racial slur at the Plant. This 1997 incident as too attenuated for a reasonable juror to infer causation.

14

278. In response to this proffer, Ford bore the burden of establishing that GE Lighting's reason for his discipline was a pretext, and that Ford's race was the actual reason for GE Lighting's discipline of him. Id.; see also DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998) ("[I]t is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination . . . .") (citations omitted).

In Reeves v. Sanderson Plumbing Products, Inc., the Supreme Court identified several factors appropriate to a consideration of pretext: the strength of the plaintiff's prima facie case, probative evidence that the employer's explanation is false, and any other evidence from which "no rational factfinder could conclude" there was racial discrimination. 530 U.S. 133, 148-49 (2000); see also Price, 380 F.3d at 213-14 (holding plaintiff did not make adequate showing of pretext on retaliation claim). Here, Ford has not forecast a particularly strong prima facie case of retaliation, pointing to only two instances where Calvaruso may have known of Ford's protected activities. Fatal to Ford's retaliation claim, though, is his equivocal evidence that GE Lighting acted on a pretext. Ford maintains that GE Lighting's failure to properly investigate his racial discrimination complaint that the fight was racially motivated demonstrates that its proffered reason for terminating him is not credible. However, GE

15

Lighting investigated Ford's allegation that the fight was racially motivated: Ford's termination letter recounted that GE Lighting "paid very close attention to" his allegation. Moreover, Calvaruso testified that he found no evidence that the fight was racially motivated and, importantly, none of the seven eyewitnesses suggested that racial remarks had been made, either during the fight or in the earlier break room discussion. Although Rachel Franklin, the Plant's Human Resources Director, testified that she had not personally investigated any issue of racial discrimination alleged by Ford prior to his termination, she brought the issue of discrimination to the attention of the Peer Review Panel in order that they consider it in Ford's appeal.

Finally, the fact that Ford and Heller received identical punishments is compelling support for the proposition that "no rational factfinder could conclude" that Ford's discipline was premised on retaliation. Reeves, 530 U.S. at 148. As a result, Ford has failed in his burden to show that the nondiscriminatory reason proffered by GE Lighting for his discipline was false. The district court therefore was justified in awarding summary judgment to GE Lighting on Ford's retaliation claim.

IV.

Lastly, we turn to Ford's contention that the district court erred in prematurely granting summary judgment to GE Lighting, prior to its review of the documents the magistrate judge

16

had ordered produced in camera.[9] Ford is precluded, however, from contending that inadequate discovery rendered summary judgment inappropriate, in that the court was never advised that Ford deemed additional discovery necessary in order to permit him to respond to GE Lighting's summary judgment motion. See Fed. R. Civ. P. 56(f) (providing that party opposing summary judgment on grounds that more discovery is necessary must support that point with appropriate affidavits); see also Shafer v. Preston Mem'l Hosp. Corp., 107 F.3d 274, 282 (4th Cir. 1997) ("Shafer is precluded from arguing that inadequate discovery made summary judgment inappropriate because she did not submit an affidavit informing the district court that additional discovery was necessary for her to respond to the Hospital's summary judgment motion."). We have advised litigants that we "place great weight on the Rule 56(f) affidavit" and that "the failure to file an affidavit . . . is sufficient grounds to reject a claim that the opportunity for discovery was inadequate." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)(citations omitted).

More importantly, Ford failed to advise the court at the summary judgment hearing that the discovery documents had been

---

[9] The record does not reflect whether or not the district court conducted an in camera review of the documents produced by GE and GE Lighting on January 16, 2004, before it issued its written summary judgment opinion on February 2, 2004. Nevertheless, the court possessed the documents for eight days prior to notifying the parties, on January 24, 2004, of its decision to award summary judgment to GE Lighting.

17

submitted for in camera review or that it deemed additional discovery to be necessary.  Cf. Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244-45 (4th Cir. 2002) (concluding that nonmoving party's objections that summary judgment was premature served as functional equivalent of affidavit).  In this proceeding, because Ford neither filed an affidavit supporting further discovery nor contended at the summary judgment hearing that a ruling was premature, we are unable to conclude that the district court abused its discretion in its handling of these discovery issues.

V.

Pursuant to the foregoing, we affirm the district court's award of summary judgment to GE Lighting.

AFFIRMED