**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

WILLIAM PRICE,

*Plaintiff-Appellant,*

v.

TOMMY G. THOMPSON, SECRETARY, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,

*Defendant-Appellee.*

No. 03-2184

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Marvin J. Garbis, Senior District Judge.
(CA-02-3721-MJG)

Argued: May 5, 2004

Decided: August 18, 2004

Before WILKINS, Chief Judge, NIEMEYER, Circuit Judge, and
Pasco M. BOWMAN, Senior Circuit Judge of the United States
Court of Appeals for the Eighth Circuit, sitting by designation.

Affirmed by published opinion. Senior Judge Bowman wrote the
opinion, in which Chief Judge Wilkins and Judge Niemeyer joined.

## COUNSEL

**ARGUED:** Leizer Zalman Goldsmith, Washington, D.C., for Appellant. John Walter Sippel, Jr., Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore,

Maryland, for Appellee. **ON BRIEF:** Thomas M. DiBiagio, United States Attorney, Baltimore, Maryland, for Appellee.

---

**OPINION**

BOWMAN, Senior Circuit Judge:

In this failure-to-hire retaliation case, we must consider whether the selecting official's inconsistent statements are enough to satisfy the plaintiff's burden of proof as to the elements of his prima facie case and as to pretext. The District Court determined that these inconsistencies did not provide sufficient evidence of pretext and granted summary judgment to the defendant. William Price, the plaintiff, appeals. We affirm.

This case stems from Price's unsuccessful attempts to gain employment at the National Institutes of Health (NIH). In 1995, Price applied for a job as a Medical Equipment Repairer. Price was one of four candidates classified as highly qualified after an initial round of screening, and he was subsequently interviewed in early May by the selecting official, Johnny Robbins. Ultimately, Robbins selected two of the highly qualified applicants but not Price. In late August of 1995, after Robbins made his selections, Price ran into Robbins on the NIH campus and they had a brief, friendly conversation about what Price might do to be a more attractive candidate. In response to Price's questions, Robbins did offer some suggestions and, over the next several months, Price followed through on some of those suggestions. In January of 1996, Price learned that one of the individuals that Robbins hired had, in Price's estimation, inferior credentials. To confirm that this individual was in fact the one who was hired, Price phoned him at NIH, ostensibly to congratulate him on getting the job and to ask after any future openings at NIH. This individual later informed Robbins about the call. On January 22, 1996, three days after his phone call, Price filed an EEO complaint alleging that he had been discriminated against in the hiring process. During the investigation, the EEO counselor spoke with Robbins about the complaint twice, but for only approximately one minute each time. It was during one of these brief conversations that Robbins related to the EEO

counselor the fact of Price's phone call to one of the successful candidates. Eventually, the EEO counselor filed a report concluding there had been no discrimination.

In July of 1996, Price applied for a Biomedical Engineering Technician position at NIH, for which Robbins was also the selecting official. Price was again included on the list of highly qualified applicants, was again interviewed (in October), but was again not selected. Thereafter, Price filed another EEO complaint that raised several charges of discrimination as well as a charge of retaliation based on his prior EEO complaint. Price dropped his discrimination claims and his retaliation charge was heard by an EEOC administrative law judge who, after a full hearing, ruled there had been no retaliation for Price's prior protected activity. Price then filed this suit in federal court alleging that Robbins violated 42 U.S.C. § 2000e-3 (2000) when he retaliated against Price by refusing to select him on account of his prior EEO complaint. The District Court concluded that Price could not prove his prima facie case because Price was unable to demonstrate that Robbins knew Price had filed the EEO complaint and, even assuming the existence of a prima facie case, because Price was unable to show Robbins's reasons for not selecting him were pretextual. We review the District Court's summary judgment decision de novo, reading the record in the light most favorable to Price, the non-moving party. *Dugan v. Albemarle County Sch. Bd.*, 293 F.3d 716, 720 (4th Cir. 2002).

A plaintiff lacking direct evidence of retaliation may utilize the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), framework to prove a claim of retaliation. *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989). In the *McDonnell Douglas* framework, the plaintiff must first establish a prima facie case of retaliation, whereupon the burden shifts to the employer to establish a legitimate non-retaliatory reason for the action. If the employer sets forth a legitimate, non-retaliatory explanation for the action, the plaintiff then must show that the employer's proffered reasons are pretextual or his claim will fail. More specifically, the plaintiff can prove pretext by showing that the "explanation is 'unworthy of credence' or by offering other forms of circumstantial evidence sufficiently probative of [retaliation]." *Mereish v. Walker*, 359 F.3d 330, 336 (4th Cir. 2004) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256

(1981)). We turn now to the first part of the *McDonnell Douglas* test, the prima facie case.

To establish his prima facie case of relatiation, Price must show that he engaged in protected activity, that Robbins took adverse action against him, and that a causal relationship existed between the protected activity and the adverse employment activity. *King v. Rumsfeld*, 328 F.3d 145, 150-51 (4th Cir.), *cert. denied*, 124 S. Ct. 922 (2003). The parties agree that Price can satisfy the first two elements of his prima facie case: Price's EEO complaint is protected activity, and the later decision not to hire him is an adverse action. For its part, the District Court concluded that Price was unable to demonstrate a causal connection between his EEO complaint and Robbins's decision not to hire him because Price could not show that Robbins knew Price was the individual who filed the complaint. Viewing the record, however, in the light most favorable to Price, we conclude that a reasonable trier of fact could find that Robbins knew Price was the individual who filed the EEO complaint based on the circumstantial evidence that Price has presented. First, as Price points out, the pool of possible complainants was small: there were only two highly qualified applicants who were not selected. Second, the August meeting between Price and Robbins, though cordial, could have alerted Robbins to Price's doubts about the decision not to hire him, especially in light of the EEO investigation. Third, Robbins knew that Price called one of the hirees; Robbins subsequently relayed this information to the EEO counselor. It is also the case that Robbins testified that he did not know Price was the complainant and that the EEO counselor testified that she did not tell Robbins who the complainant was and that she had no reason to believe that Robbins knew who the complainant was. Still, a reasonable factfinder could elect not to credit fully the testimony supportive of Robbins in favor of the circumstantial evidence tending to show that Robbins knew or strongly suspected that Price was the complainant.

Knowledge alone, however, does not establish a causal connection between Price's protected activity and Robbins's decision not to hire him. Previously, this Court has held that a causal connection for purposes of demonstrating a prima facie case exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity. *Cerberonics, Inc.*, 871 F.2d at 457.

We assume, without deciding, that in the failure-to-hire context, the employer's knowledge coupled with an adverse action taken at the first opportunity satisfies the causal connection element of the prima facie case. *Cf. Williams v. The Nashville Network*, 132 F.3d 1123, 1132 (6th Cir. 1997) (finding causal connection where secretary forwarded plaintiff's applications for further consideration prior to EEOC complaint, but did not forward subsequent applications). We are also mindful, however, of the fact that generally the passage of time (nine to ten months in this case) tends to negate the inference of discrimination. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (per curiam) (citing cases); *Dowe v. Total Action Against Poverty*, 145 F.3d 653, 657 (4th Cir. 1998). Though we regard it as a very close question, we conclude that Price has established a prima facie case of discrimination because a reasonable trier of fact could conclude that Robbins knew of the protected activity and because Robbins, at the first available opportunity, declined to hire Price.

Price urges that the District Court erred when it concluded that he was unable to show that Robbins's explanations for refusing to hire him were pretextual. Specifically, he contends that he has rebutted the legitimate non-retaliatory explanations that were offered by showing inconsistencies in Robbins's testimony and by eliciting admissions regarding these explanations. Thus, he claims that under *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), he is not required to provide additional evidence of discrimination and is entitled to survive summary judgment.

In *Reeves* and its predecessor, *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993), the Supreme Court had occasion to consider what showing a plaintiff had to make regarding pretext and, specifically, whether a plaintiff could satisfy his or her burden by merely rebutting the defendant's explanation for the action. In doing so, the Court held that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148. This Court has applied the *Reeves* formulation and has explained that it operates based on "the strength of the prima facie evidence in creating an inference of discrimination, and 'the general principle of evidence law

that the factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt.'" *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 648 (4th Cir. 2002) (quoting *Reeves*, 530 U.S. at 147). A prima facie case coupled with probative evidence "that the employer's explanation is false," *Reeves*, 530 U.S. at 149, would counsel against granting the employer summary judgment unless the employer presented other strong evidence from which "no reasonable factfinder could conclude" that there was discrimination. *Id.* at 148. More generally, *Reeves* states:

> Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.

*Id.* at 148-49.

As a matter of fact, when this Court has applied the *Reeves* methodology to sustain a verdict or to allow a plaintiff to survive summary judgment, it appears to have done so only in cases where the plaintiff had a substantially stronger case than Price has in the case at bar. *Compare Dennis*, 290 F.3d at 649-50 (affirming jury verdict for plaintiff) *with Mereish*, 359 F.3d at 336-37 (holding that stray comments regarding generational change were insufficient evidence of pretext in ADEA claim) *and Rowe v. Marley Co.*, 233 F.3d 825, 830-31 (4th Cir. 2000) (affirming grant of summary judgment and concluding plaintiff had not "forecast any evidence that casts doubt on the veracity of [the employer's] proffered explanation for his termination."). In *EEOC v. Sears Roebuck & Co.*, for instance, this Court reversed a grant of summary judgment in favor of the employer after applying the *Reeves* formulation. 243 F.3d 846 (4th Cir. 2001). The Court concluded that "the EEOC made out a strong prima facie case of national origin discrimination and offered ample evidence to discredit Sears's proffered non-discriminatory reason for its failure to hire Santana." *Id.* at 854. In that case, the Court emphasized the fact that the plaintiff

> presented uncontroverted evidence of a strong prima facie case—despite his repeated applications, his superb qualifi-

cations, and his expressed willingness to accept any available position, Sears refused to hire him . . . and instead hired a Caucasian woman who, Sears itself concedes, was less qualified than [the plaintiff].

*Id.* at 852. Moreover, the Court concluded, and the employer largely conceded, that the proffered non-discriminatory reasons were inconsistent over time, false, and in some instances based on mistakes of fact on the employer's part.[1] In those circumstances, the plaintiff was entitled to survive summary judgment. In short, the Court found a strong prima facie case and a strong showing of pretext. *Id.* at 857 ("[T]here is a clear prima facie case of employment discrimination, a good deal of evidence of pretext casting serious doubt on the employer's proffered justification for its job action, and nothing to prevent a rational fact-finder from finding that the employer was motivated by discriminatory reasons."). The present case is demonstrably different.

Here, as we already have suggested, Price has not put forward a particularly strong prima facie case of retaliation. Fatal to his attempt to invoke *Reeves* is that his showing of pretext is equivocal at best. In his EEOC investigation affidavit, Robbins offered essentially four reasons for not hiring Price for the second position: that Price was less experienced (especially with laboratory equipment); that Price was not certified; that Price was not currently working in the field, had experienced a break in service, and might require extra training; and that Price wanted to redefine the position. Price asserts that he has demonstrated that these reasons were pretext for retaliation because the reasons are based on mistakes of fact or because Robbins has taken inconsistent positions regarding them. We disagree.

With respect to the candidates' experience level, Price points out that Robbins later admitted that Price was "quite equal as far as experience" to the candidates who were hired. EEOC Admin. Tr. at 58 (Dec. 8, 1998). Consequently, he argues, Robbins's earlier claim that he was not as experienced must have been pretext. We agree that a

---

[1] We note that mere mistakes of fact are not evidence of unlawful discrimination. *See, e.g.*, *Jordan v. Summers*, 205 F.3d 337, 344 (7th Cir. 2000) ("Pretext is a lie, not merely a mistake.").

thorough review of Price's application reveals a great deal of experience with laboratory and patient-care equipment. Still, it was Robbins's testimony that this information struck him later, only after he "read the applications several times . . . to make sure that there wasn't something that I perhaps overlooked." *Id.* at 60. This answer squares with our own review of Price's application, which highlights his experience with patient-care equipment as opposed to purely laboratory equipment. For instance, the OF 612 form that Price filled out, which lists his last two jobs, speaks largely in terms of familiarity with medical equipment and mentions laboratory equipment almost as an afterthought: "[M]y primary responsibility was to test, calibrate, maintain, install, and repair biomedical instrumentation such as portable xray units, patient monitors, gas lasers, ultrasound imagers, blood gas analyzers, surgical devices, and laboratory equipment." *Joint App.* at 150. Price's other application materials also list and discuss his familiarity with medical equipment before discussing his familiarity with laboratory equipment. Similarly, although his performance ratings were outstanding, his supervisor discussed his work on medical, not laboratory, equipment. *Id.* at 152 ("Mr. Price demonstrated excellent performance in his knowledge and technical ability to affect [sic] repairs on medical equipment and systems. His skills were instrumental in keeping all major X-Ray Systems and medical equipment in Urology functioning."). Nor is it the case, as it was in *Sears Roebuck*, that the candidates who were hired were demonstrably *less* qualified than Price. In these circumstances, we cannot say that Robbins's reassessment of Price's experience bespeaks pretext.

As for Robbins's claim that the hirees were certified and that Price was not, this appears to be incorrect and could be evidence of pretext. Still, this evidence does not hint greatly of pretext because Price has not adduced other substantial evidence of pretext or evidence of mendacity to support an inference that the incorrect reason was not merely the honest mistake that Robbins suggests explains his inconsistencies. *See* EEOC Tr. at 62.[2] More to the point, the only evidence in the

---

[2]Robbins's testimony at the EEOC hearing includes the following:

Q: [Plaintiff's Counsel] And why is your testimony different today?

A: [Robbins] I don't think it's different. I just think that I'm just in a position sometimes to supply some additional information.

record suggests that Robbins believed the two hirees were certified because they brought this fact to his attention. In contrast, Price apparently never highlighted to Robbins the fact that he was certified.[3]

---

Q: So you couldn't have supplied that information to me at the time? Is that right? At the deposition?

A: I was very nervous at the time and I still am today.

EEOC Tr. at 62. Robbins explained other of the inconsistencies saying:

Okay. This is my first time dealing with an EEO complaint and sometimes when you're dealing with something for the first time, some of the things you do forget. Sometimes if you're asked the same question several months later or a year later you will remember different things. And this is what happened in this particular situation here is that there was [sic] quite a few questions during that first deposition that I just could not remember what took place on that particular day in your office. *Id.* at 58.

[3] A: [Robbins] I do recall Mr. Gantt was saying that he had been a biomedical engineering technician for maybe six or eight months and . . . Mr. Baron, he had proof of his certification with his application.

Q: [Plaintiff's Counsel] I'm sorry. You said Mr. Gantt had what as far as certification?

A: He had - - I believe he said he had been working as a biomedical engineering technician for I guess at that time from six to eight months.

* * * *

Q: What organization or organizations certifies biomedical engineering techs?

A: I do not know.

Q: So why did you use the term certified on your affidavit?

A: It was a requirement from my supervisor at the time.

Q: Your supervisor said you had to sign an affidavit that said something about certification?

A: No. The requirement was in the PD [position description?]. And so when I wrote the affidavit, I put that in there.

A reasonable trier of fact could easily conclude that Robbins was wrong about Price's certification status but would be hard-pressed to conclude that this established pretext.

Price next argues that he can show pretext in Robbins's claim that he (Price) would require extra training. Specifically, Price claims that Robbins's explanation that the hirees were preferable because they were already working in the field (and would not require training) is false because when asked what extra training Price might require, Robbins stated that "I do not know [why this would be a problem]." *Id.* at 67. But Price can create this seeming inconsistency only by taking Robbins's testimony out of context. We note that seven lines later, in response to the question, "[W]hat was the connection between the break in service and Mr. Price not being selected?", Robbins explained that the connection was "the changes in technology. If there's a break in service and whatnot. A lots [sic] of changes take place within two to three years." *Id.*; *see also id.* at 61 ("Mr. Price had been out of the field for a few years and Mr. Gantt and Mr. Baron [were] currently working in that particular field, I think across the board, Mr. Price would require some additional training."). We see no inconsistency in Robbins's explanation and cannot conclude that a

---

Q: You put in there that Mr. Gantt had certification; yes? Yes or no?

A: And Mr. Baron, I believe.

Q: But in fact, you don't know if Mr. Gantt is certified at all. Is that right?

A: Only what he told me, that he had been working as a biomedical engineering technician for six to eight months.

Q: How long had Mr. Price been working as a biomedical engineer at that time?

A: As I recall, I'm thinking maybe seven or eight years.

Q: Was Mr. Price certified?

A: Yes.

EEOC Tr. at 62-64.

reasonable trier of fact could find this reason was pretextual.

With respect to Robbins's claim that Price suggested he wanted to redefine the position, we see no evidence of pretext whatsoever. In his EEOC affidavit and in his testimony, Robbins consistently explained that because Price mentioned that "he could also see [the job] as someone acting as a liaison between me and the engineering staff and the administrative staff," Robbins concluded that Price wanted to redefine the position. *Id.* at 65-66. As Robbins further explained, being a liaison "was not a requirement of that position description," *id.* at 66, and reflected unfavorably on Price's candidacy.[4] At most, Price earned an admission that this was a somewhat intangible factor and that Robbins was unsure precisely what weight it played in the hiring decision. *Id.* at 67. We conclude that a reasonable trier of fact could not find that Robbins's cryptic concession about the weight that Price's desire to redefine the position played in Robbins's decision not to hire Price is evidence from which a reasonable trier of fact could find pretext.

At most, therefore, Price can demonstrate that Robbins was wrong about one reason (certification) and was misled by Price's own application as to Price's level of experience. As for the other two nondiscriminatory reasons (Price's need for extra training and that Price wanted to redefine the position), the plaintiff has not shown pretext. In these circumstances, there is insufficient probative evidence of pretext to permit a court to send this case to the jury under *Reeves*. While "it is *permissible* for the trier of fact to infer the ultimate fact of [retaliation] from the falsity of the employer's explanation," *Reeves*, 530 U.S. at 147, it is axiomatic that the plaintiff must in fact provide sufficient evidence from which a reasonable trier of fact could find falsity. Here, Price has failed to come forward with that sort of evidence.

---

[4] Q: [Plaintiff's Counsel] Did you consider Mr. Price's remark to you in that regard about being a liaison as unfavorably reflecting on his candicacy?

A: [Robbins] Well, yes, if he wants to — if he's trying in some way to redefine what that particular position was all about or is all about.

*Id.* at 66.

Accordingly, the District Court did not err when it granted the defendant summary judgment.[5]

For the foregoing reasons, the judgment of the District Court is affirmed.

*AFFIRMED*

---

[5]We pause here to emphasize that although *Reeves* will allow a plaintiff to survive summary judgment without presenting independent evidence of discrimination (or retaliation), it will permit this only where the other evidence of discrimination is sufficiently strong to ensure that the employer is held liable for unlawful discrimination and not merely for inconsistent statements that arise from reading applications hastily or from being nervous during depositions. This is a crucial point because our laws impose liability only when "the employer's action was the product of unlawful discrimination" and do not impose liability simply because "the employer's explanation of its action was not believable." *Hicks*, 509 U.S. at 514, 515.