**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 08-1312**

_____

ESTHER COLEMAN,

          Plaintiff - Appellant,

     v.

LOUDOUN COUNTY SCHOOL BOARD; EDGAR B. HATRICK; ROBERT F. DUPREE, JR.; MATTHEW BRITT,

          Defendants - Appellees.

_____

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Claude M. Hilton, Senior District Judge.  (1:07-cv-00091-CMH-TCB)

_____

Submitted:  August 28, 2008          Decided:  September 29, 2008

_____

Before NIEMEYER and MOTZ, Circuit Judges, and WILKINS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

Christopher E. Brown, BROWN, BROWN & BROWN, P.C., Alexandria, Virginia, for Appellant.  Julia B. Judkins, Allyson C. Kitchel, TRICHILO, BANCROFT, McGAVIN, HORVATH & JUDKINS, P.C., Fairfax, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Esther Coleman appeals the district court's grant of summary judgment in favor of Loudoun County School Board, Edgar B. Hatrick, Robert F. DuPree, Jr., and Matthew Britt, her former employer, on her wrongful termination charge, filed pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17 (2000).[1] Coleman, an African-American, was employed as Director of Personnel Services for the Loudoun County Public Schools ("LCPS") for approximately two and a half months. Coleman alleges that her former employer discriminated and retaliated against her based on her race.

I.

We review the facts in the light most favorable to Coleman, because this is an appeal from the district court's adverse grant of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (noting that all evidence must be construed in the light most favorable to the party opposing summary judgment). Britt, Assistant Superintendent for Personnel Services with LCPS, also an African-American, knew Coleman prior to her application for employment, sat on the interview panel when she was interviewed, and advocated for and recommended her hiring to

_____

[1]Although Coleman also asserted a claim under 42 U.S.C. § 1983 (2000), the district court held that she abandoned that claim and Coleman does not contest this determination on appeal.

2

Hatrick, LCPS Superintendent. Hatrick submitted Coleman's name to the School Board and recommended her hiring. Coleman began her job with LCPS on April 22, 2005. Shortly after Coleman began working, Britt attested that he met with her to tell her that she was not working long enough hours, as the Personnel Department was typically busy hiring and replacing new employees during the month of April. In addition, he sent Coleman a series of emails beginning on May 5, 2005, expressing questions, concerns, or comments suggestive of her failure to perform or complete duties and assignments.

On June 8, 2005, Coleman participated as a member of an interview panel for the Director of Elementary Education position, at which two African-American females and two Caucasian males were considered. One of the females had been solicited to apply for the position by Coleman. During Coleman's candidate's interview, the candidate told the panel that within a few days she was to be announced as principal of a new school in a different school system, and that if she were offered the LCPS position she would prefer that the job offer be made to her prior to the announcement of the other position to which she had committed herself.

In discussing the merits of the candidates and their qualifications, some panel members expressed concern that Coleman's candidate was actively interviewing for their position when her appointment as a principal for a new school had recently been

3

accepted and was about to be announced, as well as the fact that they would be unable to complete the hiring process in the limited time period prior to the announcement being made. Coleman expressed to the panel members that she felt the votes were lining up against the two African-American candidates and that the panel had already pre-selected Dr. Martin, the then Assistant Director for Elementary Education, who ultimately was given the Director position. There is no dispute that Martin was qualified for the position.

On June 10, 2005, Britt held a six-week review meeting with Coleman to discuss her job performance. Britt had given Coleman two to three-days' notice of the meeting, and had prepared a written document outlining the various issues of concern he wished to address with Coleman at the meeting. During the meeting, Britt expressed concerns about Coleman's leadership abilities and her promptness in responding to requests from superiors. Among the issues he addressed with Coleman, he expressed concern that she had been unable to provide him with continually updated data regarding personnel hires, remaining vacancies, and outstanding offer letters, which was crucial to the performance of her job.

Coleman, several days prior to her meeting with Britt, and in apparent concern that Britt would terminate her employment during the meeting, prepared a document titled "Respect," which she gave to a co-worker and which ultimately made its way to Hatrick,

4

Britt's supervisor, and to Britt himself in mid-June, and caused Britt to feel as though he had been "betrayed by [his] Director."[2]

While both Britt and Coleman felt the June 10, 2005, meeting went well, Britt continued to have concerns about Coleman's job performance as she remained unable to provide him with the updated data he requested. On June 29, 2005, Coleman emailed Britt asking for a meeting to discuss her employment. At the meeting on June 30, 2005, she asked Britt whether he would give her a positive reference if she resigned. After consulting with Hatrick, Britt offered Coleman a severance package in exchange for her resignation that day, which she appeared inclined to accept, making June 30, 2005, her last day on the job. Coleman thereafter chose not to resign and termination proceedings were commenced. While she remained on the payroll for several months thereafter, Coleman actually was on the job for approximately two and a half months,

---

[2]Coleman testified that she prepared the document as a list of points to cover with Britt at their June 10th meeting, and gave it to her co-worker to pass along to Hatrick, Britt's supervisor, in case she was terminated during her meeting with Britt. The document reflects dissatisfaction Coleman had with Britt and accused Britt of not having respect for "human resource learning and development," "human resource time," "human capacity," "human unity," or "human dignity." In it, Coleman complains, among other things, that Britt's tone "can be harsh and threatening," that he needs to give "far more praise than criticism in order to motivate people," and intimates that he and his management style are responsible for a lack of motivation by those subordinate to him. Among the complaints Coleman listed in the document was that she "[p]ersonally [] did not know until [she] got on the job] that [she] was expected to regularly work nights and to be at school board meetings several nights a month."

from April 22 until June 30, 2005, as the Director of Personnel Services.

Coleman filed a grievance under the Virginia grievance procedures and, at the conclusion of an extensive fact-finding hearing, a three member panel[3] unanimously concluded that Coleman had not been discriminated against based on her race or retaliated against based on her comments made at the June 8, 2005, interview panel, and that there were justified job performance issues which formed the basis of Britt's and Hatrick's recommendation for her termination from employment. Following review of the panel's report, the School Board met on June 20, 2006, and voted four-to-one in favor of accepting the recommendation for termination of Coleman's employment. Following issuance of a right-to-sue letter from the Equal Employment Opportunity Commission, Coleman filed the instant action.

## II.

We review <u>de</u> <u>novo</u> the district court's grant of summary judgment, applying the same standards that the district court was required to apply. See <u>Laber v. Harvey</u>, 438 F.3d 404, 415 (4th Cir. 2006) (en banc). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

---

[3]The panel included a member selected by Coleman.

6

no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(c) (West 1992)). The party seeking summary judgment has the initial burden to show absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The opposing party must demonstrate that a genuine issue of material fact exists. Mere allegations or denials are insufficient. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A mere scintilla of evidence supporting the case also is insufficient. Id.; see also Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). As noted above, we construe the evidence in the light most favorable to Coleman, the non-moving party, and draw all reasonable inferences in her favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

Coleman's Complaint alleged that she was subjected to retaliatory actions[4] in violation of her rights under Title VII. To establish a prima facie case under Title VII for retaliation, Coleman's evidence must demonstrate that: (1) she engaged in protected activity under Title VII; (2) the employer took adverse employment action against her; and (3) there was a causal connection between the protected activity engaged in by the plaintiff and the subsequent action taken by the defendant. See

---

[4]Coleman also alleged claims of a hostile work environment, which claims likewise were rejected by the district court. However, she has not raised a challenge to this ruling on appeal.

<u>Price v. Thompson</u>, 380 F.3d 209, 212 (4th Cir. 2004). Assuming that a <u>prima facie</u> case is established, the burden then shifts to the employer "to rebut the presumption of retaliation by articulating a legitimate nonretaliatory reason for its actions." <u>Holland v. Washington Homes, Inc.</u>, 487 F.3d 208, 218 (4th Cir. 2007) (internal quotation marks omitted). The burden then shifts back to the plaintiff "to show that the reason is mere pretext for retaliation by proving both that the reason was false and that discrimination was the real reason for the challenged conduct." <u>Id.</u> (internal quotation marks omitted).

Here, the district court concluded that Coleman failed to establish the first and third elements of a <u>prima facie</u> case of retaliation because there was no protected activity and no causal connection. In addition, the district court determined that, even if Coleman had established a <u>prima facie</u> case of retaliation, she failed to rebut the legitimate, non-discriminatory reasons her employer had for terminating her. There is no dispute that Coleman's termination constitutes an adverse employment action.

Plaintiff asserts that she engaged in protected activity when she complained to the June 8, 2005, hiring committee that she believed African-American candidates were being treated unfairly, and that Defendants retaliated against her complaint by terminating her employment. To have engaged in a protected activity, a plaintiff must oppose an "employer's discriminatory activities."

8

<u>Laughlin v. Metropolitan Wash. Airports Auth.</u>, 149 F.3d 253, 259 (4th Cir. 1998) (internal citations omitted). "[T]o show 'protected activity,' the plaintiff in a Title VI retaliation case need 'only . . . prove that he opposed an unlawful employment practice which he reasonably believed had occurred or was occurring.'" <u>Peters v. Jenney</u>, 327 F.3d 307, 320 (4th Cir. 2003) (internal citations omitted). This requires that the plaintiff: (1) have a good faith belief that the employer is engaging in an unlawful employment practice; and (2) that the belief is objectively reasonable in light of the facts. <u>Id.</u> at 321.

Here, we agree with the district court that even assuming, <u>arguendo</u>, that Coleman's belief was in good faith that the June 8, 2005, panel members considering the candidates for the Director of Elementary Education position were discriminating against the African-American candidates, such belief was not objectively reasonable. There is no evidence whatsoever, other than Coleman's own self-serving, unsubstantiated opinions, which is insufficient to stave off summary judgment,[5] that the panel members discriminated against the African-American candidates. First, there is no dispute that Martin was qualified for the job, particularly in light of the fact that he was then currently employed as the Assistant Director of Elementary Education for

_____

[5]<u>See</u> <u>Williams v. Cerberonics, Inc.</u>, 871 F.2d 452, 455 (4th Cir. 1989).

9

LCPS.  Second, there is no evidence that any of the panel participants had any racial motive in recommending Martin or in preferring him over any of the other three candidates, whether African-American or Caucasian, male or female.  Finally, the non-discriminatory reasons the panel chose not to recommend the hiring of Coleman's preferred candidate were clear, legitimate, and non-discriminatory.[6]  As Coleman failed to establish that her belief that the panel was discriminating against African-Americans was objectively reasonable, and thus did not prove the first element of her prima facie case of retaliation, we need not reach the question of whether Coleman established the causation element.

Moreover, even if Coleman had established a prima facie case of retaliation, we agree with the district court that the

---

[6]That is, that the candidate had accepted the appointment as principal in a new school, that the announcement of that appointment was about to take place, and that she was interviewing for another job.  In addition to the ethical and loyalty issues associated with that situation was the issue relative to the panel's being able to complete the hiring process within the time-frame requested by the candidate.  Moreover, Coleman's argument that the panel's discomfort with regard to plaintiff's candidate's newly accepted position was evidence of unfair or discriminatory treatment because the job application asked whether the applicant preferred not to have LCPS contact their present employer is without merit.  This was not simply a situation where an employee wished to keep a job search confidential.  Rather, it was a situation where the candidate had recently accepted, with another school district, a very visible and important position, which position was about to be publicly announced, only to turn around and interview with another school district hoping to acquire what she apparently thought to be a more desirable position.  That the panel was uncomfortable with this situation, especially where another well-qualified candidate readily was available, is neither surprising nor does it constitute evidence of discrimination.

10

employer has offered unrebutted legitimate and non-discriminatory reasons for terminating Coleman.  While she disputes the extent, timing, and particulars of the employer's complaints with her job performance,[7] she does not dispute that:  (1) Britt, her immediate supervisor, had sent her a series of emails prior to her participation on the June 8, 2005, interview panel expressing questions, concerns, or comments suggestive of her failure to perform or complete duties and assignments; and (2) she was aware that he had concerns about her job performance several days prior to their June 10th meeting, and prior to the June 8th interviews, prompting her to draft the "Respect" document.  Nor has Coleman demonstrated, despite the extensive record in this case, that the real reason for her termination was racially based.  See Holland, 487 F.3d at 218.

Finally, although not relied upon by the district court, we note that the same people who hired Coleman for the job, Britt and Hatrick, one of whom also is African-American, made the decision ultimately to terminate her, thus powerfully undercutting her claim of racial discrimination.  See Proud v. Stone, 945 F.2d 796, 797, 798 (4th Cir. 1991) (reasoning that "[f]rom the standpoint of the putative discriminator, it hardly makes sense to

---

[7]We find Coleman's argument that Britt's failure to follow specified performance review guidelines somehow demonstrates pretext and evidence of his intention to discriminate against her to be uncompelling.

11

hire workers from a group one dislikes . . . only to fire them once they are on the job" and concluding that "[w]hen the hirer and firer are the same individual, there is a powerful inference relating to the 'ultimate question' that discrimination did not motivate the employer."  (internal quotation marks omitted)).

                            III.

      For the foregoing reasons, we affirm the district court's grant of summary judgment and dismissal of Coleman's action.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

                                          AFFIRMED