Cynthia C. WILLIAMSON, Plaintiff,

v.

CAROLINA POWER & LIGHT COMPANY d/b/a Progress Energy Carolinas, Inc., also known as Progress Energy, Inc., Defendant.

No. 5:10–CV–258–BO.

United States District Court, E.D. North Carolina, Western Division.

March 27, 2012.

Sandra J. Polin, Law Office of Sandra J. Polin, Cary, NC, for Plaintiff.

Jonathan Travis Hockaday, Zebulon D. Anderson, Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP, Raleigh, NC, for Defendant.

## ORDER

TERRENCE W. BOYLE, District Judge.

This matter is before the Court on Defendant Carolina Power & Light ("PEC")'s Motion for Summary Judgment [DE 40], seeking dismissal of Plaintiff's claims of discriminatory discharge, retaliation, and hostile work environment. Plaintiff responded on October 23, 2011 [DE 49] and Defendant replied on November 16, 2011 [DE 51]. The motion is now ripe for adjudication. Because Ms. Williamson has not presented a prima facie case as to her sex discrimination claims and because she has not overcome her employer's asserted legitimate motives, PEC's Motion is GRANTED.

## BACKGROUND

Ms. Williamson was hired by PEC on or about September 30, 2002. By January 2007, she was working as a Senior Work Management Specialist under the direct supervision of Robert Lee, the Manager of Outages and Projects. By mid–2008, her duties consisted generally of providing outage and project support to the outage management team, monitoring and tracking outage performance goals for use in calculating the department's Employee Cash Incentive Plan awards, and serving as back-up coordinator for the department's Generating Unit Maintenance Schedule.

By the end of April 2008, the company's compensation department was reviewing some of the Work Management Specialist positions, including Ms. Williamson's. After reviewing Ms. Williamson's job duties, the complexity of the tasks she performed, and the amount of discretion and judgment she exercised in the course of her duties, the compensation department concluded that her position should have been classified as non-exempt (rather than exempt) from the minimum wage and overtime requirements under the Fair Labor Standards Act ("FLSA"), and that Ms. Williamson was entitled to back pay for overtime worked during the previous two years. She received a gross payment for back pay on or about October 3, 2008. However, Ms. Williamson's classification did not change at that time because she was assigned the duties of GMS coordinator, in addition to her other responsibilities. As a result, the compensation department believed that her combined responsibilities classified her as exempt.

As reported in his declaration, Robert W. Lee, Ms. Williamson's manager from early 2007 to December 2008, noted that after becoming familiar with Ms. Williamson's work, he "became concerned that the work she was doing was not commensurate with the work expected of a Senior Work Management Specialist" [DE 43 at 2]. Later in 2008, Mr. Lee reports being approached by a number of other employees regarding the quality of Ms. Williamson's work, including complaints that she was "having trouble producing data regarding outage plans," she "did not seem to understand" requests, and "she seemed unable to demonstrate knowledge regarding upcoming outages and outage planning" [DE 43 at 3]. On her 2008 annual review (given in February 2009), Mr. Lee assigned Ms.

Williamson a "met expectations" rating overall, but gave her a lower "met most, but not all expectations" rating in "Strategic Thinking and Problem Solving" [DE 43 at 19].

In December 2008, Mr. Lee was promoted to Director of Support Services and was involved in the decision to hire Ms. Hannah Randall as his replacement in the Manager–Outage Support position. Ms. Randall began managing Ms. Williamson in late April 2009 and documented Ms. Williamson's performance-related issues in a Performance Development Log ("PDP Log"). In early May 2009, Mr. Lee and Ms. Randall coached Ms. Williamson about her failure to include the necessary specific measurements to determine outage scores and successes. In June, Ms. Randall requested that Ms. Williamson add an additional column to her year-to-date spreadsheet for monthly reporting purposes. A month later, after making several requests, Ms. Williamson still had not added the requested column.

In early 2009, PEC began its annual Compensation Ongoing Review and Evaluation process, in which Ms. Williamson's position was slated for review. After reviewing Ms. Williamson's duties, the compensation department concluded that her position should be classified as non-exempt under the FLSA. A new "job family" was created, to include Ms. Williamson's duties and those of three other employees. The "job values" of these positions were decreased and some of their rates of pay were lowered. Ms. Williamson was informed that her pay rate would be frozen for six months, and then decreased by 10% every six months until it reached 120% of her new job value.

On July 21, 2009, Ms. Williamson asked to meet with Mr. Lee. The two dispute the content of that meeting. Mr. Lee asserts that Ms. Williamson complained about Ms.

Randall's job performance and that he recommended that Ms. Williamson list her specific concerns and that she have more frequent meetings with Ms. Randall. Ms. Williamson claims that she reported to Mr. Lee that she felt she was being harassed and subjected to a hostile work environment by Ms. Randall because of her gender. On July 27, 2009, Ms. Williamson and Ms. Randall met to discuss these issues. Ms. Williamson conveyed that she felt that Ms. Randall had been condescending, but did not complain about a hostile work environment or harassment. Ms. Randall told Ms. Williamson that she lacked confidence in the accuracy of her work and that she had received complaints from another manager about the accuracy of her work. Ms. Williamson alleges that Ms. Randall told her that if she were a "real woman" like Ms. Randall, she would have come to Ms. Randall directly with her complaints [DE 45–2 at 11]. They agreed to meet more frequently in the future to discuss these issues.

For a time after this meeting, Ms. Williamson's work improved and Ms. Randall gave her positive feedback on two assignments. On her 2009 mid-year review, the positive trend in Ms. Williamson's work was noted, but Ms. Randall also pointed out that Ms. Williamson was still working to learn some of her position's "core business functions."

After additional entries by Ms. Randall in the PDP Log related to missed deadlines and erroneous reports, on October 27, 2009, Mr. Lee and Ms. Randall decided to place Ms. Williamson on a Performance Improvement Plan ("PIP") for sixty days, to allow her to demonstrate improvement in her performance. The PIP specifically addressed the following concerns with Ms. Williamson's performance: "(i) lack of skills necessary to perform forecasting functions and provide comprehensive prod-

ucts beyond clerical assignments, (ii) lack of qualification, validation, and verification before sending out work product; (iii) lack of communication and a questioning attitude when expectations were not understood; and (iv) lack of communications when deadlines will be missed." Ms. Williamson was given specific expectations for improvement and was advised that failure to show improvement could result in termination of her employment.

On October 30, Ms. Williamson telephoned Ms. Tiffany Cox, the Human Resources Representative for her group, and asked to transfer out of her department. She complained that Ms. Randall only communicated with her by email and mentioned the conflict over her Outage Cost Template project. Ms. Williamson alleges, but PEC denies, that she told Ms. Cox that Ms. Randall harassed her and that she was treated differently than her male colleagues.

The day after she received the PIP, Ms. Williamson emailed Mr. Dan Beahan, Manager–HR Power Operations, and complained that the PIP was retaliation for contacting Ms. Cox to complain of a hostile work environment.

On November 24, 2009, Ms. Williamson filed an EEOC charge, claiming that she had been discriminated against because of her gender, subjected to a hostile work environment, and retaliated against for engaging in protected activity on October 30. The EEOC dismissed her charge with a "no-cause" finding on March 29, 2010.

Over the course of the PIP, Mr. Lee, Ms. Randall, and Ms. Cox met with Ms. Williamson on four occasions to discuss their specific expectations for improvement. During this time, Ms. Williamson submitted late and incomplete work assignments. On January 14, 2010, Ms. Randall sent Ms. Williamson a status email, detailing the areas in which she had not met expectations. Mr. Lee and Ms. Randall decided to terminate Ms. Williamson's employment on January 19. She was not replaced in her position as Associate Planning Analyst. Mr. Lee asserts that the decision to terminate Ms. Williamson's employment was "based on her ongoing unsatisfactory performance and her failure to improve her performance under the PIP and was not in any way motivated or based upon her gender" or for any retaliatory purpose.

## DISCUSSION

### Standard of Review

Federal Rule of Civil Procedure 56 provides that summary judgment will be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party bears the initial burden to show the court that there is no genuine issue concerning any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party must then show that there is "evidence from which a jury might return a verdict in his favor." *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505.

### Discrimination Claim

Title VII makes it "an unlawful employment practice for an employer ... to discharge ... or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such indi-

vidual's ... race [or] sex." 42 U.S.C. § 2000e–2(a)(1). Absent direct evidence of sex-based discrimination, a plaintiff must proceed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, the plaintiff must establish a prima facie case of discrimination. If she does, then the burden of production shifts to the defendant to produce evidence that the defendant took the adverse employment action for a legitimate, nondiscriminatory reason. If the defendant meets its burden of production, then the plaintiff must prove by a preponderance of the evidence that the employer's stated reason for taking the adverse employment action was in fact a pretext for discrimination. *Id.*

To establish a prima facie case of discrimination Ms. Williamson must show that (1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she was performing her job in a manner that met her employer's legitimate expectations, and (4) the position remained open or was filled by someone outside the protected class. *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 285 (4th Cir.2004) (*en banc*). Because Ms. Williamson cannot sustain a prima facie claim of discriminatory discharge, her claim must be dismissed.

■ Ms. Williamson, as a woman, is a member of a protected class. She alleges that she suffered adverse employment actions when she was reclassified from an exempt employee to a non-exempt employee under the FLSA, when she was placed under a performance improvement plan ("PIP")[1], and when she was discharged from her employment. However, Ms. Williamson has failed to establish the third prong of her prima facie case—she has not shown that she was performing her job in a manner that met her employer's legitimate expectations.

■ To demonstrate that she was meeting her employer's legitimate expectations, a plaintiff must offer evidence beyond her own claim of satisfactory job performance and lay opinion testimony of her coworkers in order to survive summary judgment. *King v. Rumsfeld*, 328 F.3d 145, 149–50 (4th Cir.2003). A plaintiff's subjective opinion that she was satisfactorily performing her job cannot establish this element because it is "the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *King*, 328 F.3d at 149 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960–61 (4th Cir.1996)). As to her reclassification, Ms. Williamson has not provided any evidence that it was at all connected to her gender. It is undisputed that other male employees were reclassified from exempt to non-exempt, had their job values and pay rates reduced, and were placed into the new Planning Analyst job family [DE 42 at 6].

■ As to her discharge, PEC has presented evidence that Ms. Williamson's performance was unsatisfactory and that this unsatisfactory performance was documented over the course of at least two years. Ms. Williamson admits that her work was not meeting Ms. Randall's standards. [DE 45–2 at 26]. She has offered no evidence that her performance was meeting expectations beyond her own subjective disagreements with the evaluations and criticisms of her supervisors. Further, she has not provided evidence that Mr. Lee and Ms. Randall actually believed that

---

1. Placing an employee on a PIP is not an adverse employment action. Therefore, this action cannot provide a basis for Ms. Williamson's discrimination claim. *See Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 652 (4th Cir.2002).

her performance was adequate; that is, that the given reason for adverse action was false [DE 45–2 at 44]. *See Holland v. Washington Homes, Inc.,* 487 F.3d 208, 216–18 (4th Cir.2007). These subjective disagreements are insufficient, standing alone, to establish a genuine issue of material fact for trial.

### Retaliation Claim

In order to state a retaliation claim, Ms. Williamson must establish that: (1) she engaged in protected activity; (2) PEC took adverse action against her; and (3) a causal connection existed between the adverse action and Ms. Williamson's protected activity. *See Price v. Thompson,* 380 F.3d 209, 212 (4th Cir.2004). If Ms. Williamson makes out a prima facie claim, the evidentiary burden of production then shifts to PEC to articulate legitimate, nonretaliatory reasons for its actions. If it does, Ms. Williamson must then prove by a preponderance of the evidence that those reasons were, in fact, pretextual. *See id.*

Ms. Williamson claims that she engaged in protected activity when she (1) spoke with Mr. Lee about Ms. Randall on July 21, 2009; (2) spoke with Ms. Randall on July 27, 2009; (3) spoke with Ms. Cox on October 30, 2009; (4) emailed Mr. Beahan on November 13, 2009; and (5) filed the EEOC charge. She alleges that she suffered the adverse actions of reclassification, creation of a PIP, and termination.

■ Ms. Williamson does not dispute that the CORE analysis process, which ultimately led to her reclassification, was underway and the decision to reclassify her had already been made prior to July 21, 2009—the earliest date of her alleged protected activities [DE 42 at 4; DE 45–2 at 15]. Because decisionmakers could not have been aware of Ms. Williamson's alleged protected activities, there cannot have been a causal connection between the reclassification and those activities. *See Dowe v. Total Action Against Poverty,* 145 F.3d 653, 657 (4th Cir.1998). Moreover, Ms. Williamson does not contest that neither Mr. Lee nor Ms. Randall made the decision to reclassify Ms. Williamson's position [DE 42 at 2; DE 45–2 at 17–18].

As to application of the PIP, Ms. Williamson claims that this occurred in retaliation for her conversation with Ms. Cox on October 30, 2009, but PEC has shown that Mr. Lee and Ms. Randall decided to begin the process of placing Ms. Williamson on a PIP on October 27, 2009. Again, the fact that the alleged retaliatory action took place before the alleged protected activity precludes a finding that the activity provoked the retaliation. *See Dowe,* 145 F.3d at 657. Perhaps most importantly, placing employee on a PiP, similar to a poor performance rating, is not an adverse employment action. *See Thompson v. Potomac Elec. Power Co.,* 312 F.3d at 652.

■ As to Ms. Williamson's termination, she has failed to demonstrate a causal connection linking her termination to her protected activities. *See Dowe,* 145 F.3d at 657. Even if the temporal proximity of the two events were sufficient to support her prima facie case, she still has not put forward any evidence to dispute PEC's legitimate, non-retaliatory reason of her unsatisfactory job performance. In order to show that an employer's reason was pretext, a plaintiff must prove both that the given reason was false and that discrimination was the real reason. *Adams v. Trustees of the Univ. of N.C.-Wilmington,* 640 F.3d 550, 560 (4th Cir.2011) Her subjective beliefs are, again, insufficient to create a genuine issue of material fact for trial, and therefore this claim must also be dismissed.

### Hostile Work Environment Claim

In order to state a hostile work environment claim based on gender, a plaintiff

must allege that: (1) she suffered unwelcome harassment; (2) the harassment was based on her gender; (3) the harassment was sufficiently pervasive to alter the conditions of her employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir.2003).

Ms. Williamson must demonstrate that, but for her gender, she would not have been the victim of the alleged discrimination. *Gilliam v. S.C. Dep't of Juvenile Justice*, 474 F.3d 134, 142 (4th Cir.2007). Ms. Williamson claims that a coworker, Charlie Rose, told her that Ms. Randall disliked her because she was a woman [DE 45–2 at 22]. However, Mr. Rose testified in his deposition that he did not believe that Ms. Randall ever treated Ms. Williamson differently than her male co-workers. Rose Dep. at 23–25, 29:18–19 [DE 49–1]. Ms. Williamson's allegation to the contrary, in the form of hearsay, cannot constitute direct evidence of discrimination. Fed.R.Civ.P. 56(c)(4); *Evans*, 80 F.3d at 962. Ms. Williamson has conceded that her only direct evidence that Ms. Randall's conduct was due to Ms. Williamson's gender is her claim that Ms. Randall told her that if she were a "real woman" like Ms. Randall, she would have come to Ms, Randall directly with her complaints [DE 45–2 at 11].

■ Given that Ms. Williamson can only point to one incident of indelicate language that invoked her gender, she has failed to establish severe or pervasive discrimination. *See Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 342 (4th Cir.2006). Ms. Williamson claims that Ms. Randall additionally harassed her by: (i) speaking to her and sending her an email about a minor typographical error; (ii) changing and making corrections to her work; (iii) sending information to a stakeholder to meet a deadline missed by Ms. Williamson; (iv) verbally reprimanding her for recording overtime prior to working the overtime; and (v) speaking to her in "condescending and demeaning tones" on four occasions. However, in order to consider these acts as contributing to a hostile work environment, Ms. Williamson must provide support for her conclusion that these acts were motivated by her gender. Ms. Williamson's own "assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action." *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 (4th Cir.1989). Summary judgment is appropriate where the plaintiff has presented no facts that "tend to show this allegedly disparate treatment was due to [plaintiff's protected status] rather than [the supervisor's] admittedly low regard for [plaintiff's] individual performance." *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 281 (4th Cir.2000).

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [DE 40] is GRANTED.