DIAZ, Circuit Judge,
concurring in part and dissenting in part:
I agree with my colleagues that the district court properly granted summary judgment to the Baltimore City School Board on Collins’s Title VII race discrimination claim because Collins failed to establish a prima facie case. But given the multiple flaws and inconsistencies in the School Board’s nondiscriminatory rationale, I cannot agree that Collins has failed to offer adequate evidence of pretext with regard to her separate Age Discrimination in Employment Act (“ADEA”) claim, 29 U.S.C. § 621 et seq.
It is simply not our place to deem the School Board’s explanation — that it believed Collins requested reassignment— “reasonable” or genuine, for Collins has produced sufficient evidence to discredit that justification and create a triable issue as to pretext. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147-48, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Accordingly, I respectfully dissent from the majority’s adjudication of the ADEA claim (Part II.B.2).
I.
The Baltimore City School Board hired Collins in 1966 as a foreign language teacher at Patterson High School. In 1973, Collins was promoted to Foreign Language Department Head. In 2002, Collins was appointed as director of the evening “Twilight School” program for older students seeking a high school diploma. Both positions entailed additional supervisory responsibilities for which Collins received a stipend.
In June 2006, Collins and Principal Laura D’Anna had a conversation in which Collins expressed interest in the assistant principal position at Patterson. After D’Anna explained that she lacked the authority to hire Collins for that position, Collins supposedly conveyed her desire for a “new beginning.” J.A. 345. Collins later wrote a letter to human resources expressing her dissatisfaction with the school’s criticism and under-appreciation of her performance. The letter concluded that “I have to take this chance to have a new beginning. I can only hope that this September will be different and that my worth will be realized.” J.A. 274.
D’Anna claims that she misinterpreted Collins’s suggestion for a “new beginning,” both in the conversation and the subsequent letter, as a formal request for reassignment to a different school. As a result, D’Anna informed Human Resources Specialist David Bonn that Collins had requested a transfer. Bonn prepared a Human Resources Change Form to authorize the reassignment, which he admitted constituted a demotion, and designated the transfer as an administrative, involuntary reassignment to Forest Park High School. *275 Neither Collins nor the School Board submitted a “Transfer Request Form,” which the Collective Bargaining Agreement required for voluntary transfers, and which directed teachers to “list their choices of new assignment in order of priority.” J.A. 354.
Collins received a notification of reassignment on August 19, 2006, which ordered her to report for work at Forest Park four days later. The reassignment resulted in a $3,000 reduction in salary because Collins would not serve as the Foreign Language Department Head or Twilight Director at Forest Park. D’Anna appointed Tiffany Clark, a substantially younger employee, to replace Collins as Twilight Director at Patterson.
II.
A.
Plaintiffs asserting ADEA claims may, just as with Title VII claims, establish liability through direct evidence of discrimination or through the circumstantial proof scheme delineated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See Laber v. Harvey, 438 F.3d 404, 430 (4th Cir.2006) (en banc). Because the majority concedes that Collins has satisfied the prerequisites for a prima facie case under McDonnell Douglas for her ADEA claim, the question becomes whether a jury could find that the School Board’s alleged nondiscriminatory rationale for its adverse employment action was pretext for discrimination. See McDonnell Douglas, 411 U.S. at 804-05, 93 S.Ct. 1817.
My colleagues here improperly penalize Collins because at the summary judgment stage she had nothing to show in the way of discriminatory animus except the falsity of the nondiscriminatory explanation offered by her employer. Yet in Reeves, the Supreme Court explained that a plaintiff can create a triable issue of discrimination simply by discrediting the employer’s nondiscriminatory rationale:
Proof that the defendant’s explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party’s dishonesty about a material fact as affirmative evidence of guilt. Moreover, once the employer’s justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision. Thus, a plaintiffs prima facie case, combined with sufficient evidence to find that the employer’s asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.
Reeves, 530 U.S. at 147-48, 120 S.Ct. 2097 (internal quotations and citations omitted).
Reeves did qualify its holding with the following proviso: “This is not to say that such a showing will always be adequate to sustain a jury’s finding of liability. Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant’s explanation, no rational factfinder could conclude that the action was discriminatory.” Id. at 148, 120 S.Ct. 2097. Yet the majority mistakenly cites this exception as the rule, omitting the representative “instanc *276 es” that the Court highlighted as sufficient to take the case away from a jury.
So, for example, it may well be appropriate for a district court to grant summary judgment to an employer, even when the plaintiff has provided evidence of pretext, (1) where “the record conclusively re-veáis] some other, nondiscriminatory reason for the employer’s decision,” or (2) “if the plaintiff create[s] only a weak issue of fact as to whether the employer’s reason was untrue and there [is] abundant and uncontroverted independent evidence that no discrimination ha[s] occurred.” 530 U.S. at 148, 120 S.Ct. 2097. Neither circumstance though applies to Collins’s claim.
The majority also cites two circuit cases, apparently for the principle that there must be some affirmative evidence of unlawful animus to create a triable issue of discrimination. But to the extent either Millbrook v. IBP, Inc., 280 F.3d 1169, 1183 (7th Cir.2002), or Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 94 (2d Cir.2001), stand for such a proposition, they are wrong and we should not follow suit. The singular legacy of Reeves was the demise of the “pretext-plus” proof regime that the majority now resurrects and applies.
The holding in Reeves reflects a practical reality. An employer is not likely to leave behind direct evidence of intentional discrimination, in which case the only available proof of unlawful animus will be the lie that covers it. Diamond v. Colonial Life & Accident Ins., 416 F.3d 310, 318 (4th Cir.2005) (“The pretext framework advances that interest by compensating for the fact that direct evidence of intentional discrimination is hard to come by.” (internal quotations omitted)). This is why “the factfinder is entitled to consider a party’s dishonesty about a material fact as affirmative evidence of guilt.” Reeves, 530 U.S. at 147, 120 S.Ct. 2097 (internal quotations omitted).
Of course, liability ultimately requires the trier of fact to not only find an employer’s justification to be false, and thus pre-textual, but also find the explanation to be pretext for discrimination. See Price v. Thompson, 380 F.3d 209, 217 n. 5 (4th Cir.2004). At summary judgment, however, Reeves only requires the plaintiff to prove the former for the jury to have a “legally sufficient basis” to find the latter at trial. See Reeves, 530 U.S. at 147-48, 120 S.Ct. 2097.
B.
Collins has sufficiently discredited the nondiscriminatory explanation, accepted by the majority, that the School Board mistakenly believed that she requested a transfer. As an initial matter, the School Board’s straight-faced assertion that it actually believed an employee would want to suffer an adverse employment action is “inherently suspect.” Barnes v. GenCorp Inc., 896 F.2d 1457, 1469 (6th Cir.1990).
Further discrediting this assertion is the School Board’s failure to ensure that such a significant action, predicated upon an ambiguously expressed request for a “new beginning,” was what Collins truly desired — a step that the School Board at oral argument acknowledged a reasonable employer would have pursued. Instead, after D’Anna informed Bonn that Collins wished to transfer, Bonn immediately initiated the reassignment process, without anyone within the Baltimore City school system checking with Collins to confirm her supposed request. In particular, D’ Anna never followed up to ensure that Collins’s desire for a “new beginning” — which could have just as easily connoted a figurative “fresh start” at Patterson the next year— was actually a request for reassignment.
*277 Collins denies that she ever requested a transfer, explicitly or implicitly, and points to the fact that the School Board never asked her to file a “Transfer Request Form” as required by the Collective Bargaining Agreement. Among other things, the form would have allowed Collins to “list [her] choices of new assignment in order of priority.” J.A. 354.
More importantly, the School Board itself designated the reassignment as an involuntary, administrative transfer. The School Board insists this was a clerical error, and that it did not check the “voluntary” box on the reassignment paperwork because it did not receive a “Transfer Request Form.” Yet, no one from the School Board (1) requested that Collins fill out such a form to comply with its own internal policies, or (2) inquired what schools Collins preferred for reassignment, when she wanted to start, or what classes she wanted to teach. Instead, by way of an involuntary administrative transfer, the School Board unilaterally removed and reassigned Collins to Forest Park High School and notified Collins of her reassignment just four days before she was to report for work.
On this record, a reasonable jury could find that this was not a voluntary transfer, thereby impugning the School Board’s explanation that it actually believed that it was. At the very least, the notion that Collins’s reassignment was a genuine response to an employee’s request seems questionable as a factual matter. The School Board’s unilateral conduct — including its own designation of the reassignment as “involuntary” — simply does not square with a supposedly voluntary transfer. The rash mistake by D’Anna, the clerical discrepancy on the reassignment form, the breach of the School Board’s own reassignment policies, and the serial failures by the School Board to follow up on any of the aforementioned signs that the transfer was a mistake, together belie the School Board’s story that it transferred Collins because it actually and mistakenly believed that is what she wanted.
Further diminishing the credibility of the School Board is its inability to offer a coherent explanation for this sequence of errors. Before the district court, the School Board never admitted a mistake and instead claimed that Collins requested the transfer. Before us, the School Board admitted that it would have been wrong to designate the transfer as voluntary, and at one point suggested that the adverse employment action was an involuntary reassignment designed to resolve personal friction between D’Anna and Collins and remove a malcontented employee from the school.
Taken together, this evidence may not inexorably lead a jury to find discriminatory animus, but there is certainly something amiss with the School Board’s shifting explanations for reassigning Collins. A jury could find that the School Board was negligently but genuinely mistaken, but it could just as easily “infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.” Reeves, 530 U.S. at 147, 120 S.Ct. 2097.
My colleagues are correct that a genuine mistake is not evidence of pretext. See Price, 380 F.3d at 215 n. 1. But because the majority is plainly wrong to proclaim the School Board’s rationale “uncontradict-ed,” Maj. Op. at 273, it is for a jury, not the majority, to resolve whether a bona fide mistake was indeed the reason for the reassignment. It is worth remembering that Collins’s burden at summary judgment “is one of production, not persuasion; it can involve no credibility assessment.” Reeves, 530 U.S. at 142, 120 S.Ct. 2097 (internal quotations omitted). By improp *278 erly crediting the School Board’s side in this dispute, my colleagues have failed in their charge to “view the facts and draw all reasonable inferences therefrom in the light most favorable to [Collins], as the nonmoving party.” Rosetta Stone Ltd. v. Google, Inc., 676 F.3d 144, 150 (4th Cir.2012) (internal quotations omitted).
This case is not about whether the evidence offered by Collins establishes liability, but rather whether the evidence provides a legally sufficient basis for a jury to find for Collins on her ADEA claim. Reeves merely provides Collins with her day in court. The trier of fact may still choose to believe the School Board’s asserted rationale, or may even conclude that the explanation was pretext for something other than unlawful discrimination. But because Collins has provided sufficient evidence that the School Board’s explanation for reassigning Collins was “unworthy of credence,” Reeves, 530 U.S. at 147, 120 S.Ct. 2097, she is entitled to a trial on her ADEA claim. I respectfully dissent from that portion of the majority’s decision holding otherwise.